UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN DANIEL,
Plaintiff-Appellant,

v.                                                                                  No. 97-2645

WAL-MART STORES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
William M. Catoe, Jr., Magistrate Judge.
(CA-96-3806-6-13AK)

Submitted: June 2, 1998

Decided: July 17, 1998

Before WILKINS and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Stephen J. Henry, Greenville, South Carolina, for Appellant. Joseph
E. Major, Nancy Hyder Robinson, Thomas M. Sears, LEATHER-
WOOD, WALKER, TODD & MANN, P.C., Greenville, South Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John Daniel appeals the magistrate judge's order granting summary judgment to Wal-Mart Stores, Inc. ("Wal-Mart"), in Daniel's action in which he alleged disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (1994).[1] Finding no error, we affirm the magistrate judge's order.

Daniel, an African-American male, has been employed by Wal-Mart since 1990. In September 1995, he held the position of support manager. One of Daniel's responsibilities as a support manager was to maintain the keys for certain doors leading to a loading area in the Wal-Mart store where he worked. According to well-known Wal-Mart policy, these doors were to remain locked unless a manager was present.

On September 13, 1995, the store manager, James Slankard, found a door open. He discussed the incident with Daniel, and was then advised by security personnel to leave the door open until Charles Thompson, the district loss prevention manager, could arrive. When Thompson arrived, he discussed the situation with Daniel, who admitted leaving the door open. Slankard also advised Thompson that he had previously warned Daniel on September 4, 1995, about leaving the door open after a similar incident. Daniel, who was present when Slankard reported his prior warning to Thompson, did not deny that he had been previously warned by Slankard. Thompson then called district supervisor Tom Cundy, who gave Daniel a decision-making day.

Wal-Mart considers unlocked doors to be a very serious infraction

_____

[1] The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c)(1) (1994).

because the store sustains significant losses in inventory due to theft on a yearly basis. Thus, pursuant to Wal-Mart policy, an employee who leaves a door open is first given a warning. After a second infraction, the employee is given a decision-making day and is subject to punishment including possible termination.

Based on his belief that Daniel had already been warned on September 4 about leaving the doors open, Cundy demoted Daniel to a stocker position and decreased his salary by one dollar per hour as punishment for the second infraction.**2** After Daniel's demotion, another employee, Charles Eckelberry, a white male, left a door open on two occasions. However, because manager Kevin Norwood learned of the two offenses simultaneously, he independently decided to treat the two infractions as one.**3** Thus, he issued Eckelberry a written warning. When Daniel learned of Norwood's handling of Eckelberry's infractions, he complained to Cundy that he had been treated unfairly and claimed that the disparate treatment was based on Daniel's race.**4** Daniel filed suit under Title VII, claiming disparate treatment.

This court reviews grants of summary judgment in discrimination cases de novo. See Jones v. Wellham, 104 F.3d 620, 626 (4th Cir.

_____

**2** After the September 4 warning, Daniel signed a performance coaching record stating that he had been warned. He also wrote a statement that he felt the punishment was appropriate. Daniel never denied to Cundy or Thompson that he had left the door open and been warned by Slankard on September 4. Daniel later asserted that he did not leave the door open on September 4.

**3** Norwood became store manager subsequent to Slankard, and he was not involved in any way with Daniel's demotion.

**4** Even though Daniel was subject to possible termination as a result of the incident, Cundy stated that Wal-Mart decided not to terminate Daniel's employment because he had previously been an excellent employee, receiving unprecedented salary increases. In addition, as soon as a department manager's position became available, it was offered to Daniel. Daniel declined the position, and he refused to apply for another support manger's position that also became available. Further, after Daniel's demotion, his support manager's position was offered to another African-American, who also declined the position.

3

1997). Summary judgment is properly granted if the movant can show that there is no material fact in dispute when viewing the evidence in the light most favorable to the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of some protected classification such as race. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). "Proof of discriminatory motive is critical but sometimes may be inferred from the mere fact of differences in treatment." Id. In Title VII disparate treatment cases, the plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-55 (1981). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. See id. If the defendant establishes a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the legitimate reason asserted by the defendant was actually a pretext for discrimination. See id.

To establish a prima facie case of disparate treatment under Title VII, Daniel must prove that: (1) he was a member of a protected class; (2) the prohibited conduct of employees outside the protected class was as serious as the misconduct he engaged in; and (3) the employer imposed harsher disciplinary measures against him than against employees outside the protected class. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). Assuming without deciding that Daniel established a prima facie case, Wal-Mart proffered legitimate, nondiscriminatory reasons for demoting him. Wal-Mart contends that Daniel was demoted in accordance with a well-known company policy for leaving doors open on two separate occasions. In fact, although Daniel now claims that he left the doors open only once, he admits that he never told anyone involved in the decision-making process that Wal-Mart's belief that he had been previously warned was mistaken.

To establish that Wal-Mart's reasons for demoting him were pretextual, Daniel contends that Wal-Mart has no written documentation

4

that he left a door open on September 4, or that he received a warning. He also points to the treatment of several other employees who left doors open, but who received different punishments, and he contends that an employee was forced to file a retaliation charge because she was disciplined for an incident which she denies occurred. Finally, Daniel states that another employee was treated differently by his managers after he refused to accept Daniel's support manager position and after he refused to testify on behalf of Wal-Mart. However, none of Daniel's claims undercuts Wal-Mart's non-discriminatory reasons for demoting him.

Daniel admits that he never informed Wal-Mart personnel that they were mistaken; rather, he permitted Wal-Mart to discipline him for an infraction which he now claims never occurred. In addition, Daniel failed to challenge the evidence that shows that Wal-Mart disciplined him because they believed that this was his second infraction.

Of the employees who were disciplined for leaving doors open, two committed only one infraction and received a warning after the incident. Another employee received a warning after the first incident and was demoted and given a decrease in pay after the second incident. The last employee, Eckelberry, did leave the doors open on two occasions. However, because management learned of the two incidents simultaneously and because it was not possible to give a warning before the second incident occurred, the two incidents were treated as one. Thus, Daniel failed to identify any employee who was treated in a manner inconsistent with Wal-Mart's company policy, or any similarly situated employee who was treated differently than he was.

Finally, Daniel's remaining claims, that an employee was disciplined for an incident she denies occurred after Daniel named her as a witness, and that an employee was treated differently after refusing Daniel's support manger position and refusing to testify on behalf of Wal-Mart, do not undercut Wal-Mart's assertion that Daniel was demoted because Wal-Mart believed he twice left the door unlocked and unattended. Thus, because Daniel failed to establish that he was demoted because of his race, we affirm the magistrate judge's order granting summary judgment to Wal-Mart.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6